UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

SANTOS VALENTIN
BETANCOURTH-MARTELL,

             Petitioner,

v.

MARKWAYNE MULLIN et al.,

             Respondents.

_____/

Case No. 1:26-cv-01255

Honorable Robert J. Jonker

## **OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee, initiated this action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.)  The habeas petition challenges the lawfulness of Petitioner's current detention and asks the Court to issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 either ordering Respondents to release Petitioner or ordering Respondents to conduct a bond hearing to satisfy the requirements of due process. (Pet., ECF No. 1, PageID.3.)

In an order entered on April 20, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted.  (Order, ECF No. 3.)  Respondents filed their response on April 23, 2026, (ECF No. 4.)  However, after reviewing the response, the Court still had questions about some of the unique aspects of the case.  Therefore, the Court ordered both parties to submit supplemental briefs answering a series of questions that the Court wanted to have answered.  (ECF No. 5.)  Respondents submitted their supplemental brief on May 15, 2026.  After reviewing the parties'

submissions, the Court concludes that the petition is properly dismissed without prejudice for failure to exhaust administrative remedies.

## Discussion

### I.      Factual Background

Petitioner is a native and citizen of Honduras.  (ECF No. 1, PageID.2.)  Petitioner entered the United States on August 7, 2013, and has remained in the United States since that time. (ECF No. 4, PageID.11.)  He was encountered by Border Patrol Agents on August 10, 2013.  (ECF Np. 6, PageID.64.)  Because he was encountered within one-hundred air miles of the border and within fourteen days after his unlawful entry into the United States, he was subject to expedited removal. (*Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(iii)(II); Designating Aliens for Expedited Removal, 69 Fed. Reg. 48877-01 (Aug. 11, 2004)).  On August 11, 2013, Petitioner received an expedited removal order.  (*Id.*)

On October 9, 2013, an asylum officer determined that Petitioner's fear of persecution if returned to Honduras was credible.  (ECF No. 4-1, PageID.49.)  Therefore, on November 20, 2013, Petitioner was released from custody on a $3,500 bond, which he posted on December 10, 2013. (ECF No. 6, PageID.65.)

On August 14, 2022, Petitioner was charged with domestic violence.  (*Id.*)  He was later charged with Assault and Aggravated Assault.  (*Id.*)  All of those charges were eventually dismissed. (*Id.*)  However, when Petitioner appeared at an ICE check-in appointment on February 23, 2026, officers reviewed his file and concluded—based on his arrest and the related charges— that he had violated the conditions of his release.  (ECF No. 4-3, PageID.55.)  They thus cancelled his bond and took him back into custody.  (ECF No. 6, PageID.65.)

## II.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers upon the federal courts the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## III.    Merits Discussion

### A.    The Statutory Basis for Petitioner's Detention

In the supplemental brief that was filed with the Court on May 15, 2026, Respondents argue that because Petitioner was once subject to expedited removal proceedings, Petitioner is still—thirteen years later—subject to expedited removal proceedings.  (ECF No. 6, PageID.66.) Respondents position seems to be that because Petitioner was originally placed in expedited removal, the mandatory-detention language in § 1225(b)(2)(A) continues to govern his custody throughout the entirety of his proceedings, regardless of the later transfer to § 1229a removal proceedings or the fact that he was released on bond years ago.

The government relies heavily on a 2019 interim decision issued by the Attorney General that overturned an earlier BIA case.  The BIA case had held that non-arriving aliens who were initially placed in expedited removal but later passed a credible-fear interview and were placed into § 1229a proceedings were eligible for bond under § 1226(a).  *See In Re X-K-*, 23 I. & N. Dec. 731, 731 (BIA 2005).  The BIA reasoned that once DHS elects to place someone into full removal proceedings, the general detention framework in § 1226(a) ought to apply.  *Id.* at 735.

In the interim decision, the Attorney General reached the opposite conclusion.  *See Matter of M-S-*, 27 I. & N. Dec. 509, 515 (2019).  According to that decision, all individuals who are originally placed in expedited-removal proceedings remain subject to mandatory detention for the duration of their proceedings, even if they are released and transferred into § 1229a proceedings. *Id.*  In other words, once subject to expedited removal, always subject to expedited removal.

According to the Attorney General, this interpretation of the INA is supported by the Supreme Court's decision in *Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018).  In that case, the Court noted that Congress provided a specific release mechanism—parole—for individuals detained under § 1225(b).  *Id.*  It then further stated that Congress's inclusion of one express mechanism for release "implies that there are no other circumstances under which aliens detained under § 1225(b) may be released."  *Id.*

The Attorney General's reliance on *Jennings* is misplaced.  In *Jennings*, the Court was actually considering the question of whether detainees held under § 1225(b) should be released. In that context, it made sense to acknowledge that Congress had provided one—and only one— statutory mechanism for release.  That point, however, has no relevance to the question that the Attorney General needed to decide in *Matter of M-S-*.  In that case, the detainee—like the Petitioner here—had already been transferred from expedited removal proceedings to normal removal proceedings after an asylum officer had determined that he had a credible fear of persecution. Because he had already been released, there was no need to inquire whether the INA would permit his release under any mechanism other than parole.

The same is true in this case.  Petitioner has already been transferred into § 1229a removal proceedings and released from custody.  Even if that release was not authorized by the statute, the consequence is not, as Respondents contend, that Petitioner somehow becomes subject once again

4

to expedited-removal procedures.  Rather, Petitioner—like other non-citizens arrested within the interior of the country whose removal proceedings are governed under § 1229a—is subject to detention under § 1226(a) and is thus entitled to a bond hearing.  *See Lopez-Campos v. Raycraft*, No. 25-1965, 2026 WL 1283891, at *11 (6th Cir. May 11, 2026).

### B.    The Effect of Petitioner's Prior Bond Revocation

In the order that was entered on May 4, 2026, the Court instructed the parties to address whether the revocation of Petitioner's prior bond meant that Petitioner was ineligible to receive a second bond hearing.  (ECF No. 5, PageID.61–62.)  In their supplemental brief, Respondents indicated that this was not the case.  (ECF No. 6, PageID.70–72.)  Rather, Respondents indicated that if the Court concluded that Petitioner was being detained under § 1226(a), then he could request a "subsequent bond determination" under 8 C.F.R. § 1003.19(e).  (*Id.* at PageID.71–72.)  Respondents also explained that Petitioner would be provided with a "subsequent bond determination" hearing if he requested one in accordance with the procedure set forth in 8 C.F.R. § 1003.19(e) and provided that he could demonstrate that a material change in circumstances has occurred since he was first released on bond in 2013.  (*Id.* at Page.ID.72.)

At present, it appears that Petitioner has not requested a subsequent bond determination hearing.  Therefore, he has not exhausted his administrative remedies.  Whether to require exhaustion is within this Court's "sound judicial discretion." *See Shearson v. Holder*, 725 F.3d 588, 593–94 (6th Cir. 2013) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)).  Here, it seems appropriate to the Court to require Petitioner to exhaust his administrative remedies. Respondents have indicated that they will provide Petitioner with a bond hearing if he requests one in accordance with the procedures set forth in 8 C.F.R. 1003.19(e).  Until Petitioner has done so, it seems premature for Petitioner to seek habeas relief from this Court.  Therefore, the Court

will dismiss the petition without prejudice.  Should Respondents fail to provide Petitioner with a bond hearing after he properly requests one, he remains free to file a new petition.

### **Conclusion**

For the reasons discussed above, the Court will enter a judgment dismissing the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.


Dated:   June 1, 2026                            /s/ Robert J. Jonker                          
                                                 Robert J. Jonker
                                                 United States District Judge